**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL ACTION FILE |
| v. ) | |
| ) | NO. 1:12:CR-188-TWT/AJB |
| TIMOTHY M. THOMAS and ) | |
| MARY BETH THOMAS, ) | |
| ) | |
| Defendants. ) | |

**UNITED STATES MAGISTRATE JUDGE'S
<u>FINAL REPORT AND RECOMMENDATION</u>**

Before the Court is the motion to dismiss the indictment filed by Defendants Timothy M. Thomas and Mary Beth Thomas. [Doc. 38]. The government has filed a response opposing the motion. [Doc. 41]. The Court extended the time within which Defendant Timothy M. Thomas was to file a reply brief, [Doc. 43], but the extended deadline has expired and no reply brief has been filed. [*See* Dkt.]. For the reasons set out below, the undersigned **RECOMMENDS** that the motion, [Doc. 38], be **DENIED**.

### *<u>The Indictment</u>*

A grand jury in this District returned a five-count indictment against the defendants on June 19, 2002. [Doc. 1]. In Count One, the defendants are charged with a violation of 18 U.S.C. § 371, specifically, with conspiring from about March 2000 to June 2009, "to defraud the United States for the purpose of impeding, impairing,

obstructing, and defeating the lawful governmental functions of the Internal Revenue Service of the United States Department of Treasury in the ascertainment, computation, assessment and collection of revenue, specifically income taxes." [Doc. 1 at 1-2]. That count further alleges that the defendants carried out the conspiracy to defraud in at least five different ways, to wit, by (1) buying fraudulent and obstructive materials from a third party and submitting them to the IRS; (2) sending false, fictitious, and fraudulent documents to the IRS, the Treasury Department, and third parties, and filing false, fictitious, and fraudulent documents in court; (3) hiring an unindicted co-conspirator and a tax return preparation business located in California to prepare and electronically file false federal income tax returns; (4) sending correspondence to an unindicted co-conspirator and a tax return preparation business located in California regarding the preparation of false federal income tax returns; and (5) submitting to the IRS false documents, including false Forms 1040 and 1040X that claimed fraudulent federal income tax refunds. [*Id.* at 4]. The indictment also alleged 19 overt acts committed by the defendants individually or jointly in furtherance of the conspiracy. [*Id.* at 5-9].

In Count Two, the defendants are charged with making a false claim to the IRS on October 13, 2008, that is, by filing a Form 1040 for 2007, fraudulently seeking a tax refund of $136,826, in violation of 18 U.S.C. §§ 287 and 2. In Counts Three, Four and

Five, the defendants similarly are charged with making false claims to the IRS by submitting on February 18, 2009, fraudulent Forms 1040 for the years 2005 and 2006, and a Form 1040X for the year 2007, fraudulently seeking tax refunds of $498,765, $399,471, and $250,900, respectively. [*Id.* at 11-13].

### ***Contentions of the Parties***

The defendants claim that the indictment should be dismissed because Court One actually charges two conspiracies. They also assert that as a result of two conspiracies being charged in a single count, one of the conspiracies was charged after the running of the statute of limitations. They also argue that, in any event, their Due Process rights were violated because the government was aware of their activities as early as 2000, but the government waited 12 years to bring the indictment. [*See* Doc. 38].

In support of their argument that the indictment improperly charges two conspiracies in one count, the defendants claim that the indictment's allegations about their dealings with the American Rights Litigators (ARL), all of which occurred before May 2006, as alleged in Count One, Overt Acts 4(A) through (J), is one conspiracy, while Overt Acts 4(K) through (S) set out a different conspiracy, that being a scheme to "proactively recuperate funds [they] believed were being wrongfully withheld." [*Id.* at 2; *see also id.* at 4 ("[T]wo alleged conspiracies occurred, one

3

involving ARL and the 'tax defiance' agenda and a second with [ ] Teresa Marty who offered assistance in reclaiming assets that she instructed were being held by the Secretary of the Treasury.")]. They allege that one scheme involved the avoidance of tax payments, while the other scheme was to collect funds from the Treasury. [*Id.* at 6]. They also allege that the first scheme, occurring no later than April 2006, was outside the six-year statute of limitations for tax offenses as provided in 26 U.S.C. § 6531(8). [Doc. 38 at 4-5].

They next assert that the government was well aware of their activities as of 2000 and yet waited until 2012 to indict them. They assert that they have been harmed by this delay because they no longer have documents that could demonstrate that they did not benefit from their tax avoidance activities, because they no longer possess records to demonstrate their considerable overhead in running their business 12 years ago. They also postulate that the only cause of such a delay was to hamper the defense. [*Id.* at 7-8]. They seek a hearing to flesh out their claims. [*Id.* at 8].

The government responds that the indictment is not subject to dismissal because Count One properly charges a single *Klein* conspiracy[1]; the limitations period has not

---

[1] A § 371 conspiracy where the victim is the IRS and the objective is to defeat its lawful functioning is known as a *Klein* conspiracy from the case styled *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957). *See United States v. Adkinson*, 158 F.3d

4

run; the defendants' motion seeks dismissal of the indictment but does not assert grounds why Counts Two through Five should be dismissed; and the defendants' due process rights were not violated because they did not establish that they were prejudiced by any delay, nor have they shown that any delay was caused by the government's deliberate act to gain a tactical advantage. [*See* Doc. 41].

### *Discussion*

A count in an indictment is duplicitous if it charges two or more "separate and distinct" offenses. *United States v. Schlei*, 122 F.3d 944, 977 (11th Cir. 1997); *United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir. 1989). The *Schlei* Court recognized that a duplicitous count poses three dangers: "(1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence." *Id.* (quoting *United States v. Wiles*, 102 F.3d 1043, 1061 (10th Cir. 1996) (finding no duplicity where the indictment merely alleged multiple means or methods of committing a single offense), *modified*, 106 F.3d 1516 (10th Cir. 1997), *judgment vacated on other grounds United States v. Schleibaum*,

1147, 1154 (11th Cir. 1998).

5

522 U.S. 945 (1997)). Under this analysis, the key issue to be determined is what conduct constitutes a single offense. *Schlei*, *id.*

"The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.'" *Braverman v. United States*, 317 U.S. 49, 54 (1942) (citation omitted). "A single agreement to commit several crimes constitutes one conspiracy. By the same reasoning, multiple agreements to commit separate crimes constitute multiple conspiracies." *United States v. Broce*, 488 U.S. 563, 570-71 (1989). Where one broad conspiracy exists, charging multiple purposes is not improper. *United States v. Lyons*, 703 F.2d 815 (5th Cir.1983). However, where separate conspiracies are apparent, charging the same in one global count is improper. *United States v. Elam*, 678 F.2d 1234 (5th Cir. 1982).

"In determining whether a single conspiracy existed, [the court] must ask, 'what is the nature of the agreement. If there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, then it is one conspiracy.'" *United States v. Knowles*, 66 F.3d 1146, 1158 & n.43 (11th Cir. 1995) (quoting *United States v. Cole*, 755 F.2d 748, 764 (11th Cir. 1985), and *United States v. Perez*, 489 F.2d 51, 62 (5th Cir. 1973)). In evaluating

6

multiple conspiracy claims, the Eleventh Circuit considers the following factors: (1) whether a common goal exists; (2) the nature of the scheme underlying the crimes alleged; and (3) the overlap of the participants. *United States v. Anderson*, 326 F.3d 1319, 1327 (11th Cir. 2003) (citing *United States v. Chastain*, 198 F.3d 1338, 1349 (11th Cir. 1999)).

In determining whether there was a common goal, the element is defined broadly. *United States v. Moore*, 525 F.3d 1033, 1042 (11th Cir. 2008). In the present case, the indictment charges a single common goal "to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of the Internal Revenue Service of the United States Department of Treasury in the ascertainment, computation, assessment and collection of revenue, specifically income taxes." [Doc. 1 at 1-2]. Defendants' motion ignores the plain language of the indictment in trying to allege separate goals of avoiding taxes and collecting funds from the Treasury, and hyper-technically reads the overt acts that the government has alleged were committed in furtherance of the one overarching common goal to frustrate and obstruct the tax-determination and tax-collection responsibilities of the IRS.

Second, the indictment alleges that the Thomases were engaged in a single enterprise to impede and obstruct the lawful functions of the IRS. A plain reading of

7

the overt acts that the defendants are alleged to have committed in furtherance of the conspiracy demonstrates a single scheme. The defendants obtained from and submitted to ARL[2] materials intended to impede the IRS's lawful functions, and after having been sent letters by the IRS about the defendants' tax liability, Defendant Timothy M. Thomas submitted to TIGTA frivolous "Complaints," seeking (in 2000) the termination of the IRS "District Director of Atlanta" and (in 2003) an investigation of the Chief of the IRS Automated Collection System. [*Id.* at 5-6]. He thereafter sent a fictitious "Registered Bond for Discharge of Debt. [*Id.* at 6]. He also sent an "Affidavit of Truth," in which he asserted he was a "non-tax payer," to the residence of an IRS revenue agent, as well as a letter to the IRS stating that a commercial lien had ben filed against two IRS employees. [*Id.*]. In 2008 and 2009, the defendants submitted tax returns reporting false information and fraudulently seeking tax refunds. [*Id.* at 7-8].

---

[2] The indictment alleges that ARL is a Florida-based tax defiance organization that promoted and sold fraudulent tax schemes that interfered with and obstructed the administration of the internal revenue laws by, among other things, selling (1) "Bills of Exchange," which purported to be legitimate financial instruments issued under authority of the United States that could be used to pay any tax or other liabilities, but which were fictitious, worthless and had no value; (2) letters that could be sent to the IRS, which made frivolous and false arguments that the customer was not liable for federal taxes; and (3) documents titled "Complaints" for customers to send to the Treasury Inspector General for Tax Administration (TIGTA), a Treasury Department agency, whose tasks included providing independent oversight of the IRS. [Doc. 1 at 2-3].

AO 72A
(Rev.8/82)

Also, on or about June 11, 2009, Defendants Timothy M. Thomas and Mary Beth Thomas sent separate false, fraudulent and fictitious documents to the Secretary of the Treasury, including documents titled "Private Registered Bond for Setoff" in the amount of $100,000,000,000.00. [*Id.* at 8-9]. These allegations demonstrate a single concerted scheme to defy and impede the lawful functions of the IRS.

Finally, both Thomases were engaged in the single scheme. It is not necessary for each conspirator to participate in every phase of the criminal venture, provided there is assent to contribute to a common enterprise. *United States v. Calderon*, 127 F.3d 1314, 1329 (11th Cir. 1997). They both engaged the services of ARL, used the services of a California tax preparer, filed false tax returns and submitted obstructive documents to the IRS such as the "Private Registered Bond for Setoff." In addition, Defendant Timothy M. Thomas submitted fraudulent and fictitious documents to the Treasury after the IRS sent correspondence to the Thomases about their joint tax liability.[3]

---

[3] To the extent that the defendants submit evidence in addition to that alleged in the indictment, the Court is not authorized to consider such extraneous facts at this stage of a criminal proceeding. *United States* v. *Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) ("By now it has become well-established that '[t]he sufficiency of a criminal indictment is determined from its face.'. . .") (citation omitted); *United States v. Plummer*, 221 F.3d 1298, 1302 & n.3 (11th Cir. 2000) ("In reviewing a motion to dismiss an indictment we look only at whether the Government has alleged each of the

As a result, Count One of the indictment does not contain two separate conspiracies, but rather alleges a single *Klein* conspiracy. That being the case, the statute of limitations has not run because multiple overt acts in furtherance of the conspiracy charged were committed within the limitations period. *Grunewald v. United States*, 353 U.S. 391, 396-97 (1957) ("For where substantiation of a conspiracy charge requires proof of an overt act, it must be shown both that the conspiracy still subsisted within the [period of limitations] prior to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period. "); *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986) (holding that on conspiracy charges which require listing of overt acts, the statute of limitations is satisfied if the last overt act alleged and proved occurs within the limitations period).

---

elements of the statute" and noting that the district court in ruling on the motion to dismiss the indictment for failure to state an offense improperly considered facts not alleged in the indictment when focus should have been on indictment itself); *United States v. Critzer*, 951 F.2d 307 (11th Cir. 1992) ("The sufficiency of a criminal indictment is determined from its face."); *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (when considering a motion to dismiss an indictment, the allegations in the indictment must be taken as true).

Thus, the motion to dismiss on grounds of duplicity and violation of the statute of limitations should be denied.[4]

The indictment also is not subject to dismissal on Due Process pre-indictment delay grounds. As the Eleventh Circuit has held:

> [P]re-indictment delay may raise due process concerns in certain circumstances. In *United States v. Solomon*, we held, "To establish that a pre-indictment delay violated his due process rights, a defendant must show (1) that he was actually prejudiced by the delay in preparing his defense, and (2) that the delay was unreasonable." 686 F.2d 863, 871 (11th Cir. 1982). We look at unreasonableness in pre-indictment delay cases through the lens of tactical advantage, and the court "has said that the motivations behind the delay must violate 'fundamental conceptions of justice', or a sense of 'fair play' or 'decency.'" *Id.* (quoting *United States v. Parker*, 586 F.2d 422, 431 (5th Cir. 1978); *United States v. Shaw*, 555 F.2d 1295, 1299 (5th Cir. 1977)). Applying this standard, the *Solomon* court found, "Even if [the defendant] had made the necessary showing of prejudice . . . he has not demonstrated that the delay was for the purpose of giving the government a tactical advantage." *Id.* at 872. Tactical advantage is the touchstone in pre-indictment delay cases, and in *United States v. Lindstrom* the court explicitly held an appellant must show "(1) that the delay caused actual prejudice to the conduct of his defense,

---

[4] Even if Count One was duplicitous (which it is not), the proper remedy was not the granting of a motion to dismiss. Rather, the proper remedy is to require the government to elect upon which charge contained in the count it will rely. *United States v. Goodman*, 285 F.2d 378, 380 (5th Cir. 1960); *see also United States v. Salinas*, 654 F.2d 319, 325-26 (5th Cir. Unit A 1981) (noting that defendant's "motion to compel election, filed before trial, was the proper means of objecting to being charged in the same count with two or more separate offenses"), *overruled on other grounds, United States v. Adamson*, 700 F.2d 953 (5th Cir. 1983); Wayne R. LaFave, *et al.*, 5 *Crim. Proc.* § 19.3(c) (2012 update) (same).

11

AO 72A
(Rev.8/82)

and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage." 698 F.2d 1154, 1157 (11th Cir. 1983); *see also United States v. Benson*, 846 F.2d 1338, 1342-43 (11th Cir. 1988) ("Under the standard first used in [Solomon] and since used consistently in this circuit, to prevail on a due process claim, the defendant must show that any delay by the government not only caused actual prejudice, but that the prosecution 'deliberately caused the delay to gain any tactical advantage.' ") (citation omitted).

*United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011).

First, there was no significant period of delay in this case, because having concluded that Count One was properly pleaded, the indictment was returned within two and one-half years of the last overt act, well within the statute of limitations. Second, to the extent that the government "was aware" of the defendants' activities as early as 2000, the government was not required to act at that time. *Butler*, 792 F.2d at 1534 ("The government's inaction in bringing the case is insufficient, standing alone, to establish that the government's actions were motivated by an attempt to gain a tactical advantage."). The government is not required to return an indictment simply because there is sufficient evidence to do so. *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *United States v. Thomas*, 62 F.3d 1332, 1339 (11th Cir. 1995).

In addition, the defendants have not asserted a single fact beyond their conclusory allegations in support of their contention that any delay caused them to

12

suffer prejudice. There argument is all the more meritless because the materials they conclusorily claim they don't have – documents about overhead deductions – concern tax returns they filed in 2008 and 2009, not the early 2000's. Finally, and most important, the defendants similarly have not alleged a single fact which would lend support to a claim that the delay was deliberately caused by the government to gain a tactical advantage over the defendants. As a result, the motion, as well as the request for an evidentiary hearing, also should be denied on this ground. *United States v. Radue*, 707 F.2d 493, 495-96 (11th Cir. 1983) (no evidentiary hearing required on motion to dismiss for preindictment delay where motion contained no specific facts of intentional government delay or other than speculative allegations of prejudice); *see also Butler*, 792 F.2d at 1533-34 ("When a defendant asserts prejudice because of the loss of evidence, he must show that the loss impaired his ability to prove a meaningful defense.") (citations omitted).

### *Conclusion*

For all of the above and foregoing reasons, the undersigned **RECOMMENDS** that Defendants' motion to dismiss, [Doc. 38], be **DENIED**. The Court has now ruled on all pretrial motions referred to it and has not been advised of any impediments to the

13

scheduling of a trial. Accordingly, the undersigned **CERTIFIES** this case **READY FOR TRIAL**.

**IT IS SO RECOMMENDED and CERTIFIED**, this 31st day of December, 2012.

_____
**ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)